From L. G. Rarig, Danville.

## Marley's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bok, and Bolger, JJ., and Marx, P. J., twenty-third judicial district.

*Michael A. Foley*, for exceptants.

*W. Glenn George*, contra.

BOLGER, J., April 2, 1937.—The auditing judge disallowed a claim for alleged advances to decedent during his lifetime, and exceptions thereto were taken.

Claimant was a stepdaughter of decedent, at whose home she lived as a boarder. Prior to May 31, 1933, she paid $6 a week, plus varying additional amounts, for her own board and for that of her cousin, who likewise lived at decedent's residence. At that time decedent lost his position, and thereafter claimant paid some $20 per week regularly until the date of decedent's death, on November 2, 1935. The chief witness presented by claimant was her mother, decedent's widow. Her testimony was inconsistent. On the one hand she testified that decedent promised to reimburse the claimant for the difference involved in the increased weekly payments, while on the other hand she testified quite clearly elsewhere that the increased sum, when paid, represented board. From this testimony, as well as the other testimony adduced, the auditing judge found that claimant had not sustained the burden of proof placed upon her, and disallowed the claim.

He did not believe that part of the testimony of Mrs. Marley, decedent's widow, where she stated that decedent promised to reimburse claimant for the increased payments. Without this testimony claimant's case is without any support whatsoever.

We are now called upon to rule upon the exceptions which aver that the auditing judge erred in his findings of fact. A review of the record reveals that these findings of fact were based upon the evidence as well as from inferences and deductions based thereon.

When a hearing judge refuses to believe the testimony of a witness, his conclusion as to credibility will not be disturbed unless his acts are biased, capricious, or unreasonable: Link's Estate (No. 1), 319 Pa. 513.

It is a well-established principle of law that findings of fact by an auditing judge, like the verdict of a jury, will not be disturbed unless clear error is shown. To justify a reversal there must be manifest error: Schultz's Estate, 24 D. & C. 546.

Though it is the duty of the court en banc to review carefully such of the findings of fact of a chancellor as

have been made the subject of exceptions, "yet great weight is to be given to those findings in cases where, as here, they depend, in large degree, on the credibility of witnesses whom he saw and heard, and whose testimony, for that reason, he is best able to weigh. . . . As the tone and manner of a witness not infrequently indicate whether or not he is telling the truth, the rule above stated applies to findings of fact which are inferential, as well as to those which have been expressly testified to": Thorndell, Admr., v. Munn, 298 Pa. 1; Belmont Laboratories, Inc., v. Heist et al., 300 Pa. 542.

In applying these principles of law to the instant case we advert to the rule that claims of the character here presented must be as definite and precise as is required to recover a debt in an action at common law: Blumberg's Estate, 115 Pa. Superior Ct. 310, and cases therein cited; and, further, that although claimant was merely a stepdaughter of the decedent she resided in his household, and we therefore must consider this relationship in passing upon the claim: Goodhart's Estate, 278 Pa. 381; Hirst's Estate, 274 Pa. 286.

We are impressed with the language in Blumberg's Estate, supra, where the court quoted from Gilbraith's Estate, 270 Pa. 288:

"Claims against a dead man's estate, which might have been made against himself, while living, are always subjects of just suspicion, and our books . . . are full of expressions by this court of the necessity of strict requirement of proof and the firm control of juries in such cases."

We have carefully examined the record in this estate, and can find no error in it. We see no occasion to differ from the auditing judge in his findings of fact, or in the inferences and deductions which he made from the testimony.

We cannot conclude without stating that even though the auditing judge had credited the part of Mrs. Marley's testimony wherein she stated that the decedent agreed to reimburse claimant he would still have been faced with

another very serious question which we doubt he could have resolved in favor of claimant, namely, the amount due. The claim is for a definite amount of money at the rate of $14 per week. The testimony was that board was paid prior to decedent's losing his position at the rate of $6 per week, but that in addition thereto claimant constantly made additional payments to Mrs. Marley of $2, $5, and sometimes $10 weekly. How the auditing judge was to determine the difference between such indefinite amounts and $20 per week, the amount paid regularly after May 31, 1933, does not appear: See Hirst's Estate, 274 Pa. 286.

The exceptions are dismissed and the adjudication is confirmed absolutely.