## Mooney's Estate.

Argued October 8, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. T. Tredway,* for appellant.

*C. M. Murphy,* for appellee.

OPINION BY MR. JUSTICE DREW, November 12, 1937:

At the audit of decedent's executors' account appellant presented a claim for wages for personal services alleged to have been rendered decedent in her lifetime. After hearing, the auditing judge rejected the claim and entered a decree of distribution, appellant's exceptions to which were dismissed by the court en banc. This appeal followed.

Appellant's claim was that she had served decedent as nurse, dressmaker, business adviser and companion from March 15, 1925, to October 28, 1928, and from December 27, 1928, until June 30, 1931, and that decedent had promised to pay her by legacy. Decedent died on June 22, 1936, testate, but without fulfilling the alleged promise. The court below was of opinion that the testimony was most indefinite and unsatisfactory and did not establish that the alleged services were performed, and, if performed, that they had not been paid for periodically.

Appellant's burden on this appeal is extremely heavy. We have said many times that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion *(Gross's Est.,* 284 Pa. 73, 75; *Reynolds v. Williams,* 282 Pa. 148, 150) and must be established by evidence "clear, precise and indubitable": *Copeland's Est.,* 313 Pa. 25, 29; *Rocks v. Sheppard,* 302 Pa. 46, 50; see also *Calvert v. Eberly,* 302 Pa. 152; *Goodhart's Est.,* 278 Pa. 381. Furthermore, appellant must overcome a presumption that any services rendered were paid for from time to time while they continued: *Gross's Est.,* supra; *Flaccus v. Wood,* 260 Pa. 161. This presumption "will gather strength with each succeeding year, and the evidence to overthrow it must of course be correspondingly increased": *Gregory v. Com.,* 121 Pa. 611,

622; *Gilbraith's Est.,* 270 Pa. 288, 291. Finally, the finding of the auditing judge who saw and heard the witnesses is conclusive where there is evidence to support it, and it is not based on a capricious disbelief of the witnesses: *Osterling's Est.,* 323 Pa. 23; *Pusey's Est.,* 321 Pa. 248, 261; *Copeland's Est.,* supra.

Appellant's niece, with whom she lived, was her principal witness. She was in doubt as to when appellant began serving decedent, saying first it was in 1928 and later that it was in 1925. She said she knew appellant was daily at decedent's house because she frequently telephoned her there, and went there about once a week for a brief visit; she admitted being a nurse employed twelve hours daily, that she kept her own house and was at home only in the evenings. Still she presumed to know the daily routine of appellant's duties and would have created the impression that appellant did everything decedent required, kept her house, nursed her, aided her with her business, and "was her constant companion." When pressed she showed her knowledge was based on fragmentary reports of isolated things appellant did. She testified decedent had no other servants but later explained she never saw any servants, but had heard decedent refer to them. The testimony of this witness was of no value to establish appellant's claim.

Another witness for appellant could state only that appellant accompanied decedent to the bank frequently, but admitted decedent went occasionally alone, and did transact her own business. The third and last witness testified she once saw appellant go to the train with decedent when the latter went on to Atlantic City alone. The testimony of these two witnesses was of no value.

To remove the presumption of periodic payment and to lift the bar of the statute of limitations appellant's niece explained that she knew her aunt was not being paid because she had to give her carfare to go to decedent's house, and further that she heard decedent say, "If I don't get my money and get things straightened up

to pay her while I am living, I will certainly leave it to her in my will. . . ." Another witness related that decedent had said, "She has been so kind to me I will see she is taken care of." Nothing more conclusive appears in the case. It does not appear that decedent did not "get things straightened up" in her lifetime. She died possessed of an estate worth at least $60,000, which included numerous marketable securities.

The testimony was not nearly sufficient to support the claim. It was indefinite and unsatisfactory. In fact, it fell far short of proving a single essential fact. To establish a claim for a weekly wage for a period of six years, terminating five years before decedent's death, requires some pertinent testimony that is "clear, precise and indubitable." Because there was none such here the claim was dismissed.

Decree affirmed at appellant's cost.